United States District Court
District of Massachusetts

|  |  |
|---|---|
| In re:<br><br>CK LIQUIDATION CORPORATION,<br><br>Debtor<br><br>PHOEBE MORSE,<br>UNITED STATES TRUSTEE,<br><br>Appellant,<br><br>v.<br><br>ROPES & GRAY, LLP,<br><br>Appellee. | Bankruptcy Appeal No.<br>05-40062-NMG |

MEMORANDUM & ORDER

GORTON, J.

The United States Trustee for Region 1 appeals two final judgments of the United States Bankruptcy Court for the District of Massachusetts. This Court has jurisdiction pursuant to 28 U.S.C. § 158.

I. **Factual Background**

A. **Chapter 11 Filing and Conversion to Chapter 7**

CK Liquidation Corp., f/k/a Cadkey Corp., ("the Debtor") retained Ropes & Gray ("R&G") as its counsel in connection with a possible bankruptcy. Pursuant to an engagement letter between

R&G and the Debtor dated February 19, 2003, the representation

was subject to a $100,000 retainer to secure payment for services

relating to "Cadkey's obligations to ... creditors, including

preparation for a possible Chapter 11 filing by Cadkey and sale

of assets" ("the Retainer").

On August 22, 2003 ("the Petition Date"), Cadkey filed a

petition for relief under Chapter 11 of the Bankruptcy Code and,

on that same date, a request for approval of R&G as its

bankruptcy counsel in connection with the Chapter 11 matter.[1]

That application, which was granted by the Bankruptcy Court on

September 9, 2003, made reference to the pre-petition Retainer

held by R&G, of which $50,174.60 remained unincurred as of the

Petition Date.

On November 6, 2003, the Bankruptcy Court approved a sale of

substantially all of the Debtor's assets to Kubotek Corp.  As

required by the purchase agreement, the Debtor thereafter changed

its name from Cadkey Corp. to CK Liquidation Corp.

---

[1] Section 327(a) of the Bankruptcy Code states that

> [e]xcept as otherwise provided in this section, the
> trustee, with the court's approval, may employ one or
> more attorneys ... that do not hold or represent an
> interest adverse to the estate, and that are
> disinterested persons, to represent or assist the
> trustee in carrying out the trustee's duties under this
> title.

A debtor-in-possession stands in the same shoes as the trustee
for purposes of employing counsel.  See 11 U.S.C. § 1107.

-2-

On February 2, 2004, the Debtor moved to convert its Chapter 11 case into a Chapter 7 liquidation.  The Bankruptcy Court allowed the motion to convert on March 4, 2004 ("the Conversion Date"), and a motion to amend the caption of the case in accordance with the Debtor's name change on April 20, 2004.  On March 5, 2004, John Burdick ("the Trustee") was appointed Trustee in the Chapter 7 case and he immediately moved to appoint himself as counsel.  That motion was allowed without opposition on March 18, 2004, and at no point was any request made to reappoint R&G as counsel.

**B.    Final Fee Application**

On June 23, 2004, R&G filed a Final Application for Compensation and Reimbursement of Expenses ("the Final Application") in which it sought final approval for $438,245.50 in fees and $24,896.09 in expenses for services performed on behalf of the Debtor.  Of those charges, $383,689 in fees and $19,816.35 in expenses had already been approved by the Bankruptcy Court, leaving $54,556.50 in fees and $5,079.74 in expenses to be considered for approval in the Final Application.

At a hearing held on September 7, 2004 ("Final Application Hearing"), a representative of the United States Trustee ("UST") objected orally to $4,253 sought by R&G for "Post Conversion Matters" and $3,567 incurred in preparing the Final Application. Specifically, the challenged fees were as follows:

```
preparation of post-conversion creditor        $708.00
    schedules;
attendance at a post-conversion court
    hearing on the Debtor's name change
    motion                                    $1,686.50
attendance at a § 341 meeting of
    creditors                                 $1,386.50
consultation with Trustee about
    transition                                  $472.00
preparation of Final Application             $3,567.00
```

Prior to the filing of the Final Application, the United

States Supreme Court had decided Lamie v. United States Trustee,

540 U.S. 526 (2004), which involved an attorney seeking

compensation for services provided to a bankrupt debtor after

conversion of the debtor's case from a Chapter 11 to Chapter 7

bankruptcy.  The attorney had not been appointed as Chapter 7

counsel pursuant to § 327 but contended that § 330(a)(1) of the

Bankruptcy Code authorized payment to him nevertheless.

During the timeframe relevant to Lamie, § 330(a)(1)

permitted bankruptcy courts to

> award to a trustee, an examiner, a professional person
> employed under section 327 or 1103 – (A) reasonable
> compensation for actual, necessary services rendered by
> the trustee, examiner, professional person, or attorney
> ... and (B) reimbursement for actual, necessary
> expenses. (emphasis added)

11 U.S.C. § 330(a)(1).  Before being amended in 2004, the section

authorized awards

> to a trustee, to an examiner, to a professional person
> employed under section 327 or 1103 of this title, or to the
> debtor's attorney – (1) reasonable compensation for actual,
> necessary services rendered by such trustee, examiner,
> professional person, or attorney ... and (2) reimbursement

for actual necessary expenses. (emphasis added)[2]

The Supreme Court concluded that the retained reference to

"attorney" in the amended version was an error but that the text

of the statute was clear nevertheless.  Interpreting § 330(a)(1),

it held that that section

> does not authorize compensation awards to debtors' attorneys
> from estate funds, unless they are employed as authorized by
> § 327.  If the attorney is to be paid from estate funds
> under § 330(a)(1) in a chapter 7 case, he must be employed
> by the trustee and approved by the court.

Lamie, 540 U.S. at 538-39.

At the Final Application Hearing in this case, the UST

conceded that R&G's services on Post Conversion Matters provided

a benefit to the Debtor's estate and would not have been

challenged prior to Lamie but contended that R&G was not entitled

to those fees following Lamie.  With respect to the expenses

incurred in preparing the Final Application, the UST expressed

uncertainty as to whether that amount was disputable under Lamie

or for some other reason.

R&G's position at the Final Application Hearing was that the

challenged fees should be paid from the Retainer consistent with

the Supreme Court's statement in Lamie that

> Section 330(a)(1) does not prevent a debtor from engaging
> counsel before a chapter 7 conversion and paying reasonable
> compensation in advance to ensure that the filing is in
> order.

_____

[2] Section 330(a)(1) was amended in 2005 but in a way not
material to this case.

Id. at 537-38.

**C.    Decisions by Bankruptcy Court**

Approximately one week after the Final Application Hearing,
the Bankruptcy Court (Boroff, B.J.) entered an order allowing the
Final Application of R&G.  On September 27, 2004, the UST moved
for reconsideration, contending that Lamie clearly precluded
payment to R&G and that the so-called "retainer exception" was
inapplicable because it was intended to apply only to flat fee,
not security, retainers of the sort held by R&G in this case.[3]
Referring to Lamie's holding that unappointed counsel may not be
compensated from "estate funds" following a Chapter 7 filing, the
UST averred that R&G could not be paid from a security retainer
that had legally become property of the Debtor's estate upon
conversion.  See 540 U.S. at 538-39.

R&G opposed the motion for reconsideration, asserting that
1) Lamie's retainer exception authorized payment from security
retainers and, in any event, 2) the services performed by R&G
were, in fact, compensable obligations relating to the Chapter 11
matter despite the post-conversion timing of their performance.
R&G also contended that 3) the position of the UST was bad public

_____

[3] A "flat fee" retainer is an unqualified prepayment for
services whereby counsel takes title of the retainer fee on the
date of payment.  See Indian Motorcycle Assocs. III LP v.
Massachusetts Hous. Fin. Agency, 66 F.3d 1246, 1254 (1st Cir.
1995) (citations omitted).  In contrast, a "security" retainer is
held by counsel but remains property of the client until it is
earned by counsel's performance.  Id. at 1255.

-6-

policy because it would generate unduly harsh effects and 4)
there existed no newly discovered evidence or manifest error of
law or fact that merited reconsideration of the challenged order.

At a hearing on the motion for reconsideration ("the
Reconsideration Hearing"), the UST conceded that a debtor's
Chapter 11 counsel retains certain obligations to the debtor upon
conversion of the case from Chapter 11 to Chapter 7 but stated
that, notwithstanding such continuing obligations, the Lamie
decision rendered it uncertain whether a debtor's pre-conversion
counsel could be compensated for services performed after the
conversion date.  On its behalf, R&G suggested that the Retainer
should not be considered estate property, per se, because under
Massachusetts law clients are not automatically entitled to the
return of a full retainer upon termination of representation.

On February 28, 2005, the Bankruptcy Court denied the motion
for reconsideration, concluding that

> while Lamie precludes compensation from unencumbered assets
> for post-conversion services by a debtor's counsel who has
> not been re-employed by the Chapter 7 trustee, Massachusetts
> state law provides a lien for such counsel to the extent of
> an undisbursed pre-petition retainer and subject to the
> validity of the underlying claim.

In re CK Liquidation Corp., 321 B.R. 10, 20 (Bankr. D. Mass.
2005).  In essence, the bankruptcy judge determined that, even if
the Retainer became estate property upon the Conversion Date,
payment could be made from it on account of its encumbrance by a
lien under state law.  Id. at 18 (stating that "absent a

statutory provision to the contrary ... liens are unaffected by travel through a Chapter 7 case") (citing <u>Dewsnup</u> v. <u>Timm</u>, 502 U.S. 410, 418 (1992)).   Apparently bolstering the court's decision was the fact that R&G sought payment for "required", "transition" services.   <u>Id.</u> at 17, 19.   The Bankruptcy Court asserted that its conclusion was not inconsistent with <u>Lamie</u> because the Supreme Court had not specifically ruled upon whether a pre-conversion retainer could be used for payment of post-conversion services, that issue "never [having been] presented to the Supreme Court".   <u>Id.</u> at 16.

The UST has appealed to this Court the orders of the Bankruptcy Court 1) allowing the Final Application of R&G (September 7, 2004) and 2) denying its motion to reconsider (February 28, 2005).

## II.   **Discussion**

### A.   **Standard of Review**

In bankruptcy appeals, the district court reviews the bankruptcy court's legal determinations <u>de novo</u> and its factual determinations for clear error.   <u>Brandt</u> v. <u>Repco Printers & Lithographics, Inc.</u> (<u>In re Healthco Int'l, Inc.</u>), 132 F.3d 104, 107 (1st Cir. 1997).   <u>See also</u> Fed. R. Bankr. P. 8013.

As an initial matter, the parties dispute this Court's appropriate scope of review.   Although the facts of this case are largely undisputed, R&G avers that the decisions of the

Bankruptcy Court are subject to plain error review on the grounds that the arguments now proffered by the UST were not sufficiently raised before the Bankruptcy Court.  See, e.g., LaRoche v. Amoskeag Bank (In re LaRoche), 969 F.2d 1299, 1305 (1st Cir. 1992) (citing cases).  More specifically, R&G challenges arguments of the UST based upon the Supremacy Clause of the United States Constitution and Massachusetts state lien law.

The Court concludes that the UST has adequately presented the issues it raises on this appeal.  At both the Final Application and Reconsideration Hearings, the UST objected to the fees sought by R&G on the grounds of the Lamie decision.  With respect to its positions on the Supremacy Clause and Massachusetts lien law, those arguments follow from the February 28, 2005, decision of the Bankruptcy Court and were timely raised in the UST's opening brief in this appeal, thereby providing notice to R&G of the issues in dispute.  Cf. Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir. 1983) (noting that an argument raised for the first time in a reply brief or at oral argument on a motion hearing is waived because "[i]n preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed ...").  Although R&G correctly states that the UST did not rely upon the Supremacy Clause or state law in its oral arguments before the Bankruptcy Court, neither did it

participate in those hearings with reason to believe that the
bankruptcy judge would decide the fee question on the basis of
Massachusetts lien law, an issue that was apparently raised by
the court sua sponte and touched upon only briefly in the
Reconsideration Hearing.  Consequently, the Court will consider
the legal decisions of the Bankruptcy Court de novo.

**B.    Analysis**

As discussed above, the Supreme Court held in Lamie that
where appointment of counsel is subject to § 327 of the
Bankruptcy Code, an unappointed attorney may not be compensated
from estate property pursuant to § 330(a)(1).  Despite the
apparent strictness of its holding, the Supreme Court in Lamie
purported not to affect certain pre-payment procedures
established between the debtor and its counsel prior to
conversion from a Chapter 11 proceeding to a Chapter 7
liquidation.  In this case, the Bankruptcy Court determined that
a combination of the Lamie Court's "retainer exception" and
Massachusetts lien law justifies payment to R&G for services
performed after the Conversion Date.  The UST contends that, the
very fact that the Supreme Court decided against Lamie, who
sought payment under circumstances nearly identical to those in
the present case, demonstrates that the decision of the
Bankruptcy Court was in error.  R&G and the Bankruptcy Court, on
the other hand, maintain that because the Supreme Court never

addressed the precise issue at bar, a decision may be reached in this case that is consistent with the reasoning in Lamie although apparently contrary to its result.

### 1.    Lamie

Because consideration of the pending matter requires close consideration of the Lamie decision and its provenance, this memorandum proceeds to set forth the relevant history of that case.

Attorney Lamie was retained by Equipment Services, Inc., which provided him a $6,000 security retainer in connection with a possible Chapter 11 bankruptcy.  Upon that filing, Equipment Services obtained approval by the bankruptcy court of appointment of Lamie as its counsel.  Several months later, the case was converted to a Chapter 7 liquidation whereupon Lamie was not reappointed as counsel for the debtor.  The security retainer had not been exhausted at the time of conversion and Lamie continued to perform services, including: 1) notification of the debtor of the conversion to Chapter 7 and the possibility of reconversion to Chapter 11, 2) preparation of reports that the debtor was statutorily required to file, 3) distribution of a § 341 notice and attendance at the consequent § 341 meeting and 4) prosecution of an adversary proceeding that had been commenced on the debtor's behalf prior to conversion, some of which work was conducted at the behest of the Chapter 7 Trustee.  Fourteen

months after the conversion date, Lamie submitted a fee

application for reimbursement for those services rendered post-

conversion.

The UST challenged Lamie's request for approximately $1,000

of post-conversion fees, but the United States Bankruptcy Court

for the Western District of Virginia granted Lamie's fee

application.  The court concluded that, although 11 U.S.C.

§ 330(a)(1) of the Bankruptcy Code forbade Lamie from being paid

for post-conversion services from estate funds, the portion of

the security retainer from which Lamie sought payment was not, in

fact, estate property.  Although a security retainer, in

principle, becomes estate property upon conversion to Chapter 7,

the court interpreted Virginia law as excluding from the

definition of estate property, fees for Chapter 11 services that

had been contracted for pre-conversion but rendered post-

conversion.  In re Equip. Servs., Inc., 253 B.R. 724, 730-34

(Bankr. W.D. Va. 2000) (hereinafter, "In re Equip. I").  The

district court affirmed that decision on the same grounds.  U.S.

Trustee v. Equip. Servs., Inc. (In re Equip. Servs., Inc.), 260

B.R. 273, 280 (W.D. Va. 2001) (hereinafter, "In re Equip. II").

The Court of Appeals for the Fourth Circuit affirmed the

lower courts' conclusion that § 330(a)(1) of the Bankruptcy Code

would not permit post-conversion payment to Lamie from the

debtor's estate, but reversed their earlier decision interpreting

"estate property" under Virginia state law in which they concluded that a portion of the security retainer remained outside of the debtor's estate upon conversion. <u>U.S. Trustee</u> v. <u>Equip. Servs., Inc.</u> (<u>In re Equip. Servs., Inc.</u>), 290 F.3d 739 (4th Cir. 2002).

In his petition to the United States Supreme Court, Lamie presented a single question: "Does 11 U.S.C. § 330(a)(1) authorize a court to award fees to a debtor's attorney?" Brief of Petitioner at *i, <u>Lamie</u> v. <u>U.S. Trustee</u>, 2003 WL 21295241, No. 02-693 (2003). Notably, Lamie

> did not challenge the court of appeals' state-law
> determination that the particular retainer in [his] case was
> property of the estate, rather than of petitioner.

<u>Id.</u> at *13. Nor did the UST dispute that the services rendered by Lamie had been "non-duplicative, necessary to the administration of the case, and beneficial to the bankruptcy estate". <u>Id.</u> at *6.

The Supreme Court answered the question presented by the petitioner in the negative, holding that the services of Chapter 11 counsel are terminated upon conversion to a Chapter 7 liquidation and that counsel cannot be paid for any services rendered post-conversion unless duly appointed pursuant to § 327. See <u>Lamie</u>, 540 U.S. at 532. In response to the petitioner's concern that that interpretation would result in a hardship to counsel and less effective administration of bankruptcy law, the

<u>Lamie</u> Court stated that,

> Section 327's limitation on debtors' incurring debts for
> professional services without the chapter 7 trustee's
> approval is not absurd.  In the context of a chapter 7
> liquidation it advances the trustee's responsibility for
> preserving the estate.

<u>Id.</u> at 537.

The Court then articulated two means by which counsel could be

compensated for post-conversion work.  First, counsel could be

appointed pursuant to § 327.  <u>Id.</u> at 537.  Second, the Court's

decision did not purport to alter the

> routine [practice] for debtors to pay reasonable fees for
> legal services before filing for bankruptcy to ensure
> compliance with statutory requirements. ... Section
> 330(a)(1) does not prevent a debtor from engaging counsel
> before a chapter 7 conversion and paying reasonable
> compensation in advance to ensure that the filing is in
> order.

<u>Id.</u> at 537-38.

### 2.    Application to Present Case

On appeal, the UST contends that <u>Lamie</u> clearly forecloses

payment to R&G for services performed after the Conversion Date

and that Massachusetts lien law provides no escape hatch because

its operation is precluded under federal law.  R&G disputes the

contentions of the UST and maintains that, notwithstanding the

lien law argument, it is entitled to payment of the challenged

fees because they related to services that 1) were required in

connection with the transition from Chapter 11 to Chapter 7 and

2) resulted directly from R&G's authorized employment as Chapter

-14-

11 counsel to the Debtor.  The UST responds that the Supreme Court decided against Lamie under the exact same circumstances thereby requiring this Court to decide against R&G.

It is undisputed that R&G was not appointed as the Debtor's counsel upon conversion to Chapter 7 and that the challenged fees all relate to services performed after the Conversion Date.  It is likewise undeniable that some of the services performed by R&G related solely to the Debtor's Chapter 11 case, such as work concerning the Debtor's name change.  The UST has conceded, furthermore, that other post-conversion services provided by R&G were statutory obligations of the Debtor as to which Chapter 11 counsel may have been professionally obligated (and even expected by the UST) to assist the Debtor.

Because R&G was not appointed as the Debtor's Chapter 7 counsel, it is entitled to payment for services rendered post-conversion only if 1) Lamie's "retainer exception" authorizes payment, 2) the Retainer was not property of the Chapter 7 estate upon conversion, or 3) some other exception applies.  The Bankruptcy Court concluded that, notwithstanding the fact that the Retainer became property of the Chapter 7 estate upon conversion, R&G could be paid from its balance on account of Lamie's "retainer exception" coupled with the operation of Massachusetts lien law.  This Court concludes that the bankruptcy judge was mistaken in his application of the law.

-15-

### a.    Retainer Exception

Construing Lamie's "retainer exception" in conjunction with the obligation of the Chapter 7 Trustee to preserve estate property, the UST argues that the Supreme Court must have intended the exception to apply only to flat fee retainers.  R&G and the Bankruptcy Court, on the other hand, assert that security retainers must also be encompassed by the exception because flat fee retainers are typically not used in Chapter 11 cases and the Lamie Court indicated that use of such pre-payment procedures was "common practice". 540 U.S. at 537.

Although the Supreme Court's discussion of the "retainer exception" is not crystal clear, this Court finds that the Lamie Court was referring therein only to flat fee retainers.  That conclusion derives from consideration not only of the explicit text of the Lamie Court's opinion but also from the framing of that discussion by the petitioner's brief in that case.  See Brief of Petitioner at *4 (asserting that §§ 330 and 503 of the Bankruptcy Code are unaffected by "a particular form of retainer [which] [i]f properly framed, and if permitted under the legal ethics rules of the state in question, ... is the property of the attorney rather than the property of the estate").  Consequently, if R&G is to be awarded fees for post-conversion services, its entitlement may not be based solely on the "retainer exception" articulated in Lamie.

### b.    Lien Law

In the decision appealed from, the Bankruptcy Court reasoned that, because R&G's Retainer was, in its view, encumbered by a state-law property lien, it was not affected by the conversion to a Chapter 7 liquidation and, impliedly, was of no concern to the Chapter 7 Trustee.

The UST responds that the reliance of the bankruptcy judge on state lien law poses serious preemption problems under the Supremacy Clause.  See, e.g., Massachusetts Div. of Employment and Training v. Boston Reg'l Med. Ctr. (In re Boston Reg'l Med. Ctr.), 291 F.3d 111, 126 (1st Cir. 2002); Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 447 (1st Cir. 1999).  According to the UST, the application of state lien law in such a manner seriously undermines, if not circumvents, federal bankruptcy law and the Lamie decision.  Cf. 11 U.S.C. § 362(a)(4) (upon commencement of bankruptcy, automatic stay applies to "any act to create, perfect, or enforce any lien against property of the estate").

R&G objects to the UST's preemption argument but focuses its dispute on her failure to raise that argument before the Bankruptcy Court.  Otherwise, R&G contends that no problem under the Supremacy Clause exists because the application of state law was implied in the Supreme Court's discussion of the "retainer exception".

Because this Court has concluded that the "retainer exception" articulated in the Lamie decision referred only to flat fee retainers, it finds that the foregoing position of R&G is inapposite.  Moreover, the Court is persuaded by the UST's argument.  Where the Supreme Court has interpreted § 330(a)(1) as preventing payment from the debtor's estate to counsel not appointed under § 327, authorization of such payment on the basis of state law is forbidden by the Supremacy Clause.

### c.    Chapter 11 Services Rendered Post-Conversion

In its strongest legal argument, R&G contends that it is entitled to the challenged fees because they derive from Chapter 11 services which it was duly appointed to provide.[4]  R&G was approved as counsel for the Debtor-in-Possession with respect to the Chapter 11 case.  According to R&G, the fact that certain Chapter 11 services were rendered, as a temporal matter, after the Conversion Date, should not affect their status as compensable Chapter 11 services for which fees were functionally incurred before the Conversion Date.  In essence, R&G argues that the Retainer, in its entirety, did not become property of the Chapter 7 estate upon conversion, but that a portion of the Retainer remained available to counsel to effect a winding down

---

[4] The motion to amend the case caption clearly relates to the Chapter 11 case.  Other services relate to conversion of the case to Chapter 7, which R&G argues should be treated as functionally equivalent to winding down the Chapter 11 case.

-18-

of the Chapter 11 case.  R&G's argument in this regard is substantially similar to the position espoused by the bankruptcy and district courts in the Lamie case.  See In re Equip. I, 253 B.R. at 732; In re Equip. II, 260 B.R. at 280.

The UST responds that R&G's representation of the Debtor in the Chapter 11 case was terminated as a matter of law upon the Conversion Date regardless of whether it continued to provide services related to the Chapter 11 case.  The appellant notes that Lamie, too, had provided post-conversion services related to his client's Chapter 11 case but that the kind of services rendered were of no consequence to the Supreme Court because Lamie had not been appointed counsel pursuant to § 327 after conversion.  Lamie, 540 U.S. at 534 ("Unless the applicant for compensation is in one of the named classes of persons in the first part [of § 330(a)(1)], the kind of services rendered is irrelevant.")

Although the Court acknowledges that its decision may place bankruptcy counsel in the difficult position of choosing between performing fiduciary obligations to clients despite the potential for nonpayment and risking professional malpractice claims, it is bound by the Supreme Court's interpretation of the Bankruptcy Code that when a bankruptcy court converts an action from Chapter 11 to a Chapter 7 proceeding and appoints a Chapter 7 Trustee,

> this [action] terminate[s] [the debtor's] status as debtor-in-possession and so terminate[s] [counsel's] service under

§ 327 as an attorney for the debtor-in-possession. Lamie, 540 U.S. at 532. Applying that rule to the case at hand, the Court finds that R&G was terminated under federal law as counsel to the Debtor upon the Conversion Date. Any services performed after that date, even if they related to the Chapter 11 case for which R&G had been duly appointed, are not compensable from estate funds because R&G was no longer authorized under § 327. Id. Because the First Circuit Court of Appeals has held that a security retainer is property of the debtor, see Indian Motorcycle Assocs. III LP v. Massachusetts Hous. Fin. Agency, 66 F.3d 1246, (1st Cir. 1995), the Retainer at issue became property of the Chapter 7 estate upon the Conversion Date. Accordingly, R&G was not entitled to payment therefrom for services rendered after that date, regardless of the nature of those services.

**ORDER**

In accordance with the foregoing, the Bankruptcy Court's order allowing R&G's Final Application is **REVERSED**. Because the Court finds oral argument unnecessary, the Appellant's Motion for Oral Argument (Docket No. 6) is **DENIED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated: March 27, 2006

-20-